Mr. Hankins. Good morning. May it please the Court, my name is Steve Hankins. I represent the appellant BYSAFE in this case. I've reserved a few minutes for rebuttal time if that's okay. The beginning of the analysis in this case begins with the fact that this is an e-commerce patent. The 019 patent addresses a problem and it proposes a solution for how we buy and sell things in the online environment, what this Court has called the cyber market. That problem is fraud, lack of accountability, phony buyers, anonymous sellers, not knowing each other and unable to get redress from one another. The transactions are completed with the speed of a mouse click and until this solution came along in the BYSAFE patent, there was no redress for customers. This patent, the invention of this patent, is a guarantee that's tied to an online transaction. You've spoken several times in your briefs. Just a small point of clarification. I don't know if it makes any difference. You seem to equate online with internet. There are ways of making networked electronic communications without going through the internet. The internet is one of the networks that is... But it's not limited. These claims are not limited to the internet. It's not. E-commerce. This was the problem that was being addressed by the inventors at the beginning. Google argues in its briefs that the computers and the network were somehow an afterthought. But it's clear in the original application and the abstract and the background of the invention that what the inventors were trying to tackle here was e-commerce and the internet. This requires hardware. This requires cables. It cannot be done by people. Can I ask you this? We're obviously hearing this argument with the Supreme Court's consideration of Alice against CLS, I guess as it's now called, in process. And just a few days ago, the federal government filed its amicus brief. Have you had a chance to look at that? I have not, Your Honor. I'm very familiar with CLS Bank, but I have not reviewed that particular filing. The three primary steps in the claim methods, receiving by a computer, running a program. Would you advise us to wait for the Supreme Court to ask? I don't think so, Your Honor. I think this case can be decided before CLS Bank. I think the claims are different. I think the claims in CLS Bank are similar to some claims that are in prior cases where there is either a silent method claim as to an apparatus and then a somewhat anemic systems claim. Like you said, a silent method claim? Yes, so a method claim that describes a process that isn't expressly tethered to hardware. The CLS Bank case had one of those method claims, like the claim in Bilski. No computer reference. You look at the system claims and you're able to see some reference to computing systems, which some members of the court found were insufficient to sustain patent eligibility. This case is a method claim. Built into it from the beginning are all of the hardware and the connectivity and the software programs that are required for patent eligibility. That's a fundamental difference, I believe, from the CLS Bank case, Your Honor. Now, Google tells us this case is just Bilski too. Bilski has decided it. How do you distinguish yourself? Bilski had no reference to the computer in any of its claims. This claim cannot be performed without computers and the internet or a network and software running these things. Again, from the beginning of this invention through the filing of this patent and its issuance through our lawsuit against Google, what's at issue here is e-commerce. There is no analog method to perform the claims. The machines are not just integral to these inventions. They are primary and central to them. There is a controlled interaction between the customers and the vendors through the hardware and the software. Clearly, the process results in a useful, concrete, and tangible result, a guarantee. After the communications and the interactions through the parties, through the networks and the computer systems and the software, a product or a service is made, and that's the guarantee. This invention passes the 101 course filter threshold. It does significantly more than describe an abstract concept. What is an abstract concept? That's a question that the Court has asked repeatedly, and it's a complicated question. I have an answer. It may be glib, and then I have an answer to the reverse question, which is, what is not abstract? What is abstract is something that's too big to get a patent. It's what? Too big. Just too big. What's not abstract? Claims that are cabined to discrete applications, sufficiently definite to confine the patent monopoly within definite bounds. Here we have the sequence of steps set forth in the claims. We have the particular temporal limitation where the guarantee doesn't attach to the transaction until after it closes. We have the hardware and software running the system. It's a discrete invention that does not supplant, preempt is the term. What do you mean by too big? Something that isn't limited according to the laws of patentability. An idea. As opposed to a process or a thing with boundaries that are sufficiently clear to give the monopoly of the patent. This is not the case of dealer tracks. It's not the case of cybersource. It's not the case of Accenture, where computers are used to make things go faster, or computers are used to organize data. This is the case where the computers, again, weren't included at the beginning of the invention to do the things that are claimed. You cannot rest this patent from the e-commerce problems of fraud and lack of accountability. The guarantee that's provided by these methods solves those problems. This is not the case of a computer being used merely to make something go faster. I'm just trying to understand. When you say that the computers were at the beginning of the patent or something, does that have something to do with the fact that what is being guaranteed here is by definition an online transaction? Yes, Your Honor. So that the computer being used for the creation, the request for, and giving of a guarantee is only about, that it's the subject of the guarantee, is itself something taking place online? Yes, Your Honor. That's correct. When I try to place it in time at the beginning of the inventive process, it's in response to some of Google's arguments that the inclusion of the computer or the internet is somehow an afterthought, an insignificant afterthought. Clearly, that's not true. Even including and accepting your argument that the computer is somehow integral to this invention and it transforms it from an abstract idea into something patentable, doesn't it basically this patent preempt the field of third-party guarantees in e-commerce? Judge, it's not at all. And is that just because of the temporal limitation? It's the sequence of steps as described, the receiving, the process of underwriting, the offering of the guarantee, and the binding of the guarantee at the end of the process. It's that finding that the patent office found was substantial enough to put it past the prior art and make it patentable. And is that because it's after the transaction? Yes. I mean, why couldn't you just file three different patents that said the binding happens before, the binding happens in the middle, and the binding happens after, and then you would preempt the whole market? We didn't do that. What we did is we filed one that said after, and I want to point out that that's a different kind of guarantee than the kind of guarantee that someone gives before a transaction. If you're dealing with somebody and you know that it's a red bike with blue handlebars that costs $100, FedEx shipment for three days, and you guarantee that, that's a very specific set of details that go into that particular guarantee. If you offer to guarantee someone's performance before the transaction, which is possible as well, some of those materials, maybe all of those items, may not be known. So the temporal limitation isn't just a clever insert at the end of the process. It actually changes what's being offered. It's a very specific kind of guarantee. And because it changes quite dramatically the information potentially available for consideration by the underwriter. That's right. The rest of the steps, I mean, I must say, please give me, I'll consider giving you, and then you give. I mean, that's not terribly limiting. But when you've added the temporal limitation, you are, I think as you just said, providing the potential underwriter a quite different set of information. That's correct. Then you would do that. Very concrete. The universe of details are known. Don't forget the additional limitations of being online, an e-commerce transaction, the specific steps. But then that temporal placement of the guarantee creates a new creature. In analyzing the 019 patent, I'd encourage the court to think of the computers first and the methods second. That's how this invention was born. A problem in the computer world with a computer solution. Again, this has nothing, no similarity with the cases where you have a method claim like they'll be silent about hardware or computers, and then maybe a system claim later in the patent that barely references computers. The computers and the hardware and the software are built into this product from the beginning. They're fundamental, not just integral. The back and forth involvement of the parties online, the product or service that's offered after that involvement is similar to the process that the court entertained in the Ultramershal case. The creation of a product after a computer process like this one is almost similar to the Deere case, going all the way back to the Supreme Court. Certainly, the integration and involvement of the computers and the hardware is similar to the cases of Research Corp and SIRF, the satellite tracking system. You've got to have computers to do an online method like this one. Unless the court has any questions, I'll reserve the rest of my argument for about a minute. All right. Thank you, Mr. Hank. Thank you. Mr. Pincus. Thank you, Your Honor. And may it please the court, Andrew Pincus representing Appelli Google. This is not a case that requires the court to plow new ground in construing Section 101. We think looking at the court's cases, it's the sort of case the court has seen many times before, which is an attempt to take an abstract idea and stake as much... What's the abstract idea? Well, there's no dispute among the parties here, Your Honor, that the abstract idea is a transaction performance guarantee. And we've said that's an abstract idea. What's abstract about that? It's the general concept of having a third party guarantee performance of a transaction. Why is that abstract? I understand it's very, very old. You cite it as some very interesting history in your brief. But why isn't the person that came up with that in whatever, 3000 BC, inventing a new concrete idea? It may not be patentable because it's obvious or anticipated. But 3000 years ago, that seemed like a pretty novel idea. And, Your Honor, I think one can make the same argument about hedging, but the Supreme Court concluded in Bilski that hedging was an abstract idea. But that one didn't have... That wasn't linked to machine-readable mediums. It didn't have computers and algorithms and specific steps and methods at every juncture. That one was conceivably something you could have done with a pencil and paper. This one, got to have a computer. Got to have an online medium. Got to do it in a certain temporal, step-by-step fashion. Well, Your Honor, I agree. And that's Bysafe's argument. But I think the starting point is, if there... This isn't just Bilski, is it? Well, I think it is just Bilski. Because I think the limitations here... I just gave you about ten distinctions. How do you deal with those? I think the starting point is the same as Bilski, in that there's an abstract idea at the core of this claim. Which is, in Bilski, it was hedging. Here, at the core... At the transaction. As you know, you're a patent lawyer. I'm sure you know that we have long since done away with the gist of the invention, or the core of the invention. And in fact, you analyze an invention by looking at its defining features, the claim. And you don't abstract from that, to use an uncomfortable term, a core or a gist. So, leaving out the core and the gist, please go back and tell me why all the computer steps, the algorithms, the step-by-step process, does not distinguish this from Bilski. There are three limitations that Bysafe points to. That this applies to online transactions, the references to use of a computer, and the temporal limitation. I'd like to discuss them individually because it's the only way to discuss them, and then I'm happy to discuss them together. The online transaction limitation is the precise limitation that the court in CyberSource said was insufficient to create patent eligibility. Just taking an idea and saying it applies in the online world is not enough, the court said, and we think that's true here. The use of a computer, the court has said mere general references to the use of a computer are not sufficient. And we think if the court looks at the patent claim, which is on 845 of the appendix, that's exactly what's going on here. And I think a good test for thinking about computer limitations is the test that Your Honor proposed in your separate opinion in CLS, and I'd like to read from it. This is on 1302 of the opinion. This is specifically with respect to computer limitations. Whether the claims tie the otherwise abstract idea to a specific way of doing something with a computer or a specific computer for doing something. If so, they likely will be patent eligible, unlike claims directed to nothing more than the idea of doing that thing on a computer. And we think what the claim here is precisely the idea of doing the thing on the computer because what the claim does is take the three steps involved, and if the claim is on page 845 of the appendix, column 17, the three steps that are involved in any transaction performance guarantee. First, receiving the request, then deciding whether or not to provide the guarantee. You're looking at this from the perspective of here's this, I don't want to call it an abstract idea because I don't think it is, but whatever. Here's this notion of third party guarantees that's been around a long time, and you're saying just because the patent says, oh, it would be good to do them on computers, that's not good enough. But isn't the patent really more specific than that, and it's saying, look, we have a problem of how do we guarantee stuff in e-commerce, and that's a specific computer problem, and here's how we're going to implement it on a computer to solve that problem, and here's the different steps, and particularly your friend's talk about the timing is actually pretty compelling because if you guarantee it before, you don't know the price of anything, you don't know the quantity or anything, so you may be able to give a blank guarantee, but you can't tailor it, whereas if you guarantee it after, you know the purchaser has bought either a $20 book or a $40,000 car, and so you can tailor the guarantee to that. Why isn't that specific enough to get it beyond just abstract idea put on a computer? If I may, Your Honor, I'd like to respond to the first part of your question about the computer limitation and then respond to the second part of your question about the temporal limitation. I think that the way you describe this, solving an e-commerce problem, the need to have guarantees in the e-commerce world, is just another way of saying this is a patent to take the notion of transaction performance guarantees and apply it in the online world, and so just as CyberSource said, we can't take the idea of using a trusted medium of exchange, credit cards, and solving the problem that in the online world, the buyer and seller aren't in the same place and they can't use cash. That wasn't enough to say we have an online problem, how are we going to have exchange in the online world when these people are in different places? CyberSource said that's not enough. There has to be something more than saying we're applying something to the entire universe of online transactions. So, and I think if the court looks at the steps, what the steps are, again, putting the temporal limitation to one side for a moment, are the steps that are inherent in a guarantee. Receiving the request for one, deciding whether or not to underwrite it, and then telling the requester that they have the guarantee. True, the words that are used are receiving by a computer, processing by a computer, and offering via a computer, but those are what the steps really are. And I think what's critical is in none of those paragraphs does it say how the computer will be used in any particular way. And to us, as the Chief Judge said in his separate opinion in CLF, that's the critical question. To use a phrase that the court used in Mayo, is there anything... Now, if Google supplied the guarantee during the transaction and not after, you would argue you don't infringe, right? Yes. Well, then that's somewhat a meaningful limitation, isn't it? I don't think so, Your Honor, because I think dividing the world into three parts, like Rome, doesn't really provide enough of a limitation. And I think that was... That would be true if doing it before, during, or after had no meaningful distinction, but I think your friend has pointed out a very meaningful distinction between doing it before, during, or after. Well, Your Honor, it may be that there are different ways, that there's different information that would be relevant. Nothing in the claim talks about, by the way, the information or how it's going to be used or the fact that there is a special processing system. I mean, one way that this claim clearly could have been written that would make it patentable would be to say, here's the data that we're going to consider, here's our weighing formula tailored to our special weighing formula that we've thought about for the data that's available post-transaction. We have a formula that's going to weigh it and come up with the answer about whether the transaction could be guaranteed or not. You're not conceding that that would be patentable? It would be a lot closer case than this one. That starts to look a little bit like the formula in Bilski, doesn't it? Well, I think the question is, is the formula conventional or has somebody come up with something new? That would be the inquiry under Bilski and under Mayo. But here, there's not even a formula to begin with, and I think in terms of the court's questions earlier, Judge Hughes' question about how much is preempted here. At the outset of the Internet era, Google gained a significant advantage with its PageRank patent. Is that patent eligible? I think that patent is patent eligible. And why? Because Google search methodology and PageRank is an innovative way of taking lots of data and weighing it in a way that nobody had thought of to come up with an answer. The mere fact that something is a formula that can be reduced to a mathematical formula doesn't make it non-patentable. It may help if that mathematical formula is something that... I've been over the PageRank patent many times, considering it a very interesting point, but it's something you could do on a piece of patent paper. It's a rather simple algorithm. It's a series of steps which, at its core, is very general and very easily applied. Isn't it ineligible? No, I don't think it is ineligible, Your Honor, and I think it's very different from the claim here. If it's so hard to draw these distinctions, why aren't you making a 103 argument, which you say you can win on in a heartbeat, instead of throwing at us wholly subjective arguments, which none of us know the standard for? Well, I don't think... Whatever may be true in some 101 cases, Your Honor, I don't think that's true here because I think there is a 101 precedent for each of the arguments that we're making, just as there is... And I think that if you win on this case, Google loses its PageRank patent. Is that a worry? Well, I think Google's not worried about it because we think we can defend the PageRank patent. No, I think it's almost expired, hasn't it? But I think we also think that we could defend it. But I think the critical thing here is the Supreme Court in both Bilski and Mayo has said that Section 101 has content and should be applied independent of the other... Why is Mayo applicable to this case? I mean, Mayo involves not abstract ideas. It involves something entirely different. It's biology or whatever it was, but it's not an abstract idea like Bilski. It's a law-of-nature case, but the Court certainly relied in Mayo on its precedents involving abstract ideas, including Bilski. And I think what the Court there was looking at was abstract idea or law of nature. Are these limitations sufficient to take this out of that category? And I think that inquiry may be different because there may be different, obviously, factual context, but that inquiry is quite simpler. And the inquiry, what the Court said there is, is there something other than a conventional, general means of implementing the abstract idea? And we think that that's true here. And let me talk a little bit about the temporal limitation because I think... But the problem with, I mean, the problem I have in looking at Mayo in this context is when you're involving a law of nature, that fundamental idea is something that is not invented. It may be discovered, but it's not invented. But these abstract ideas, they're an invention in some sense. They may be very abstract, but somebody thought of them for the first time. And so I don't understand why we look to Mayo that much. I mean, Bilski... Well, we can look to Bilski. I don't think that there's that much difference between the two opinions. Bilski also talked about the fact that limitations that are technologically specific, which applies directly to the online limitation that my friend relies on, or routine or conventional aren't enough. So I've talked about the computer limitation, and I urge the Court to look at Bancorp and DealTrek and Accenture because I think it's similar. If I could just talk for a minute about the temporal limitation, because I think the temporal limitation is quite similar to the limitation in Bilski to energy hedging. You know, Bilski, the patent owner, said, well, I haven't claimed the universe, I've only claimed energy hedging. And I think the same argument, the kinds of information that would be flowing through the system for an energy hedge would be quite different than the kinds of information that would be flowing through the system for other kinds of hedges. But the Court said that was a conventional limitation, insufficient to render the claim patent eligible. And I think the temporal limitation here is precisely the same thing, because it also, an even easier case, frankly, for the reason that Your Honor asked about before. Three separate patent claims, the whole universe could be covered. And that's clearly not what's intended here. And I think the fatal flaw is what's happening here is the attempt to say, we want to apply this notion in the online world. What are the least amount of limitations that we have to apply to it in order to satisfy 101? And that's really not the inquiry that's in this Court's precedence. In terms of finding... You say 101, but of course you're not talking about 101, are you? Well, 101 as it's been interpreted... The statute covers this. 101 as it's been interpreted by the Supreme Court. Okay, you mean the judicial exception to 101, because the statute would cover this, right? If we just apply the statute, you lose. Well, the process is very broad. Yes, and if we cover... But it's defined in the Patent Act. Yes, but... And it covers both that. And beyond that, we have an article of manufacture, and we have a machine. In fact, we've covered three out of the four categories, haven't we? And so it's... Yes, so if we just apply the statute, you lose, right? Well, Your Honor, may I respond? This Court and the Supreme Court have obviously said that the statute has this additional limitation on it. So although it's not in the words, I think it's effectively in the words, because I think this Court's precedence and the Supreme Court's precedence are binding. I don't think that those tests... So the question remains... Can I just ask, before your time runs out, the same question I asked Mr. Hankins. Have you read the federal government's brief filed last... I have. That brief seemed to me to do a couple of things. I want to put aside a couple of sentences that seem, I don't know, just overbroad about organizing human activity, which would seem to me to cover mixed chemical A with chemical B and heat. But putting aside that, the focus of the brief is on the notion that entering into contractual transactions, which are intangible relationships, a contract isn't intangible, is broadly speaking within this exception. And that abstract idea doesn't mean generality. It means the opposite of concreteness. How do you fare under this? And clearly the government's brief is an attempt to avoid the daunting line-drawing problems of deciding what's too general or too big. Can you talk about that? Well, I think our position would be sustained under the government's approach, because I still think that the government's approach is looking broadly at the criteria that the court has laid out in Bilski. And I think under those criteria, they're trying to focus them in perhaps a little bit on the CLS situation. But my friend argued in the court below that this case was just like CLS. So I think it's pretty clear that if the ALICE patents can't be sustained, this one can't either. We think it's a much easier case than CLS. Right, but I'm just trying to explore. Nobody could possibly dispute that there are a lot of challenges in figuring out how to articulate a standard. We struggled with it. The Supreme Court has struggled with it, is in process of struggling with it. And I guess I wanted to explore with you the new submission by the federal government, which says don't focus so much on generality, focus on the nature of the transaction, and roughly speaking business transactions, the creation of legal intangibles, contracts, which I guess the surety is the focus. I guess I'm not sure that that really moves the needle much in the analysis. It seems to me, again, maybe I'm just too steeped in this case, but it seems to me saying legal creation of contracts is enough would mean that this patent would be okay, even if it didn't have any of the limitations that are relied on, because transaction performance guarantees produce contracts. No, I'm sorry. The government's brief is that if the subject of the thing is the creation of a legal intangible, it's not enough. Oh, I'm sorry. I was misunderstanding there. I'm very sorry. to what's a legal intangible. I'm not sure any of this line drawing is going to change the fact that this court has recognized. 101 requires line drawing and case-by-case adjudication. I don't want to overstay my welcome, but we think these limitations are quite clearly insufficient under the court's precedence and under Bilski. Thank you very much, Mr. Pincus. Mr. Hankins, you have rebuttal remaining? I really don't have much, Your Honor. I'm happy to answer any questions you have after that presentation. We thank you, Mr. Hankins. Thank you.